RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 6/25/10
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JEFFREY C. SWANK | CIVIL ACTION NO. 10-61 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SCOTTSDALE INSURANCE CO. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 15] filed by Defendant Scottsdale Insurance Company ("Scottsdale"). For the following reasons, the motion is DENIED.

### I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of a dispute over a commercial general liability policy ("CGL policy") between Scottsdale and Plaintiff Jeffrey C. Swank ("Swank"), covering Rooster's Country Bar ("Rooster's") in Delhi, Louisiana. Scottsdale issued the CGL policy for the period July 21, 2008, to July 21, 2009. *See* [Doc. No. 15, Exhibit A]. On December 6, 2008, Rooster's was destroyed by a fire.

On December 8, 2008, Swank filed a claim under the CGL policy with Scottsdale for losses from the fire. [Doc. No. 15, Exhibit B]. On December 9, 2008, Scottsdale hired an independent adjuster to investigate Swank's claim. *See* [Doc. No. 15, Exhibit C]. The independent adjuster contacted Swank and arrangements were made to inspect Rooster's the following day. *See id.* The independent adjuster requested that Complete Forensic Investigations, LLC ("CFI") conduct a fire investigation. *See* [Doc. No. 15, Exhibit D]. Swank granted CFI access to Rooster's and guided CFI employees on a tour of the property. *Id.*; [Doc. No. 17, Exhibit 1]. On January 2, 2009, Swank

executed an authorization form that gave Scottsdale the power to acquire bank and mortgage records, credit information, and other financial data from different institutions. [Doc. No. 17, Exhibit 2].

On January 11, 2009, CFI reported to Scottsdale that the fire was incendiary in origin. [Doc. No. 15, Exhibit D].

On January 16, 2009, Swank gave a sworn statement to the independent adjuster.[1] [Doc. No. 15, Exhibit 1]. By letter dated March 13, 2009, Scottsdale requested that Swank produce certain documents, records, and information, so Scottsdale could fully and accurately adjust Swank's claim. [Doc. No. 15, Exhibits 1 & E].

Swank avers that he maintained his personal and business office in Rooster's, and, as a result of the fire, many of the documents Scottsdale requested were lost. [Doc. No. 17, Exhibit 1]. However, Swank also avers that he sent Scottsdale past invoices that he solicited from his vendors and documents in his office that were not destroyed by the fire, including sales records, bank statements, invoices, cash register receipts, and bank deposits. *Id.* Swank further avers that he sent Scottsdale an appraisal of Rooster's dated July 3, 2008. *Id.*; [Doc. No. 17, Exhibit 4].

On April 30, 2009, Scottsdale deposed Swank. [Doc. No. 15, Exhibit 2]. Scottsdale asserts that Swank arrived at the deposition unprepared and without any of the documents Scottsdale requested. Although the deposition lasted a few hours, Swank unilaterally terminated the deposition prior to its completion with the understanding that the deposition would resume at a later date. *See id.*

By letters dated May 18 and 22, 2009, Scottsdale again requested that Swank produce the documents requested in its March 13, 2009 letter. [Doc. No. 15, Exhibits F & G]. Scottsdale also

---

[1] The contents of that statement were not submitted to the Court by either party.

requested additional financial records and documents that Scottsdale asserts were necessary to properly investigate whether there was a financial motive for the fire. *Id.* Scottsdale asserts that Swank failed to produce the requested documents. [Doc. No. 15, Exhibit 1].

On May 22, 2009, Swank filed for bankruptcy. *In re Swank*, No. 09-31066 (Bankr. W.D. La. May 22, 2009). Swank avers that a bankruptcy trustee took possession of many of his personal and business documents and that some of the requested documents remain in the custody of the trustee and the bankruptcy court. [Doc. No. 17, Exhibit 1].

On June 2 and 3, 2009, Scottsdale sent letters to Swank's business manager, Milena Merrill, explaining Swank's obligation under the CGL policy and requesting that Swank cooperate with Scottsdale in its investigation and evaluation of his claim. [Doc. No. 15, Exhibits H & I]. On June 10, 15, and 25, 2009, Scottsdale sent similar letters to Swank. [Doc. No. 15, Exhibit I].

On July 29 and August 4, 2009, Scottsdale sent two more letters to Swank requesting that he be deposed on August 31, 2009. [Doc. No. 15, Exhibits J & K]. Swank agreed to the deposition. *See* [Doc. No. 15, Exhibit 3]. During the deposition, Scottsdale asserts that Swank refused to answer questions pertaining to his financial situation and that Swank, again, unilaterally terminated his deposition before it was completed. *Id.* Swank stated that he would resume the deposition after he retained new counsel. *Id.* Again, the deposition lasted a few hours prior to Swank's unilateral termination. *See id.*

On September 23, 2009, Scottsdale sent a final letter to Swank asking that he contact Scottsdale to schedule a date for the completion of his deposition. [Doc. No. 15, Exhibit L]. Scottsdale asserts that Swank did not respond. [Doc. No. 15, Exhibit 1].

On December 4, 2009, Swank filed suit against Scottsdale in this Court. Swank alleges that

Scottsdale owes him money under the CGL policy for losses caused by the fire.

On May 12, 2010, Scottsdale filed this Motion for Summary Judgment. [Doc. No. 15]. On June 2, 2010, Swank filed a memorandum in opposition. [Doc. No. 17]. On June 16, 2010, Scottsdale filed a reply. [Doc. No. 18].

## II. LAW AND ANALYSIS

### A. Motion for Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

B. **CGL Policy**

Scottsdale asserts that Swank's claims should be dismissed as premature because Swank failed to comply with section E(3) of the "Building and Personal Property Coverage Form" that is part of the CGL policy ("section E(3)").

Section E(3) states:

> **3. Duties In The Event Of Loss Or Damage**
>
> > **a.** You must see that the following are done in the event of loss or damage to Covered Property: . . .
> >
> > > **(8)** Cooperate with us in the investigation or settlement of the claim.
> >
> > **b.** We may examine any insured under oath . . . at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records.

[Doc. No. 15, Exhibit A].

Section D of the "Commercial Property Conditions" form that is part of the CGL policy ("section D") states:

> **D. LEGAL ACTION AGAINST US**
>
> > No one may bring a legal action against us under this Coverage Part unless:
> >
> > > **1.** There has been full compliance with all of the terms of this Coverage Part
> > > . . . .

*Id.*

Under Louisiana law, an insurance policy is a contract between the parties that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003). "Interpretation of a contract is the determination of the common intent of the parties." LA.

CIV. CODE art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "[This] rule . . . does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties." *Badalamenti v. Jefferson Guar. Bank*, 99-1371 (La. App. 5 Cir. 4/25/00); 759 So.2d 274, 281. "[F]or a genuine ambiguity to exist, the insurance policy must be not only susceptible to two or more interpretations, but the alternative interpretations must be equally reasonable." *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 770 (La. 1994) (citation omitted). "[I]f after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *Id.* at 763. Furthermore, "[a]n insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Id.* (citation omitted).

At first glance, section E(3) is clear and explicit. If the insured suffers a loss or damage to property covered by the CGL policy, he or she is required to cooperate with the insurer to investigate his or her claim. Section E(3) also gives the insurer the power to depose the insured as may be reasonably required. If the insured does not comply with section E(3), section D provides that he or she may not file suit against the insurer. However, the CGL policy does not define "cooperate" or indicate when a deposition of the insured is reasonably required. Webster's Third New International Dictionary defines "cooperate" as "to act or work with another or others to a common end." Webster's Third New International Dictionary 501 (1961). This definition does not define the

extent to which one must work with another, and is susceptible to numerous reasonable interpretations. When a deposition is "reasonably required" is also susceptible to numerous reasonable interpretations. Therefore, because ambiguities exist, the Court construes section E(3) in favor of the insured.

Swank offers evidence that he assisted Scottsdale in the investigation of his claim and submitted to deposition requests. Swank's purported efforts were enough to satisfy a reasonable interpretation of section E(3). Furthermore, Scottsdale is not left empty-handed. "Since suit is now filed, [Scottsdale] has the benefit of all of the discovery rules and practices of the Court to obtain examination of [Swank]" and the production of documents. *Miers v. Niagra Fire Ins. Co.*, 205 F.Supp. 108, 110 (W.D. La. 1962).

Scottsdale seemingly attempts to equate compliance with its March 13, 2009 letter with Swank's duties under section E(3). Scottsdale's March 13, 2009 letter requested that Swank send Scottsdale:

> 1. Original, completed, signed and notarized Sworn Statement in Proof of Loss. (A blank form is enclosed for your use);
> 2. Any other insurance policies covering any aspect of this loss. If the originals of such policies are not available, please send or bring copies;
> 3. All documents regarding the damage incurred to the subject building . . . in this fire loss, and any subsequent repairs or renovations to the Property, including but not limited to, correspondence; receipts; cancelled checks; and estimates, work orders, repair invoices or contracts from any contractor, subcontractor or vendor;
> 4. All photographs of the subject property . . . taken prior to or after the loss;
> 5. All records you have regarding the items of business and/or personal property that you are claiming in this loss, including but not limited to any and all receipts, invoices, photographs, canceled checks, credit card receipts, statements, and other documents that would show when the items were purchased, where they were purchased, their cost, etc.;
> 6. Any police or fire report in your possession regarding the fire at the premises . . . ;

7. Any correspondence from any governmental or regulatory body in your possession regarding the fire at the premises . . . ;
8. Any appraisal or inspection report regarding the building at 4264 Government Street, Baton Rouge, Louisiana made for any reason;
9. All documents regarding any prior insurance claims for property damage you have filed in 2004, 2005, 2006, 2007, or 2008 (not including the present claim);
10. The statements for your cell phone beginning January 1, 2008 through the time of this inquiry;
11. All documents regarding any storage units that you or the Insured business are currently leasing or own, or were leasing or owned at the time of the loss;
12. The time card, punch cards, time clock sheets, or any other documents/references that indicate what time(s) you and any other employees entered and left the insured building on December 6, 2008.
13. A certified copy of Rooster's Country Bar, Inc's Articles of Incorporation and any amendments, alterations, or changes to them;
14. A certified copy of Rooster's Country Bar, Inc.'s By-laws or other governing rules and any amendments, alterations, or changes to them;
15. A list of all of Rooster's Country Bar, Inc.'s past and present directors, officers, members or managers;
16. A copy of Rooster's Country Bar, Inc.'s Annual Reports for the years 2004, 2005, 2006, 2007, and 2008 as it was filed with the Secretary of State;
17. A complete copy of Rooster's Country Bar, Inc.'s financial records from January 1, 2008 through the date of this inquiry.
18. Any maintenance, repair, or other reports containing information regarding the condition of the building, equipment, and contents prior to this fire loss, including correspondence from any governmental or quasi-governmental body discussing the condition of the building prior to this fire loss;
19. All records regarding the purchase, installation, monitoring, maintenance, repair or disconnections of any and all alarms, security systems, fire suppression systems, including smoke detectors, that were purchased for, installed in, or disconnected or removed from the insured premises within the last two (2) years;
20. All documents relating to any electrical work or repairs performed at the insured premises from January 1, 2008 through the present date including, but not limited to, any and all invoices, repair estimates, work orders, work schedules, receipts, expert reports, notes, photographs, calculations and/or correspondence regarding such work;
21. Any documents pertaining to any code violations or other safety violations, including any correspondence from any governmental or regulatory body discussing potential code violations, within the last five (5) years.
22. Copies of all of your personal monthly bank statements (if they do not have statements, then submit cancelled checks, ledgers, or stubs used for recording

    checks and deposits) and all working financial records from January 1, 2006 through the present. This includes any information that may be in the hands of an accountant, bookkeeper, or agent. (In the event you do not have all of their monthly bank statements, we request that you obtain duplicates from the bank . . . .);
23. All records regarding all outstanding loans, mortgages, liens, debts, judgments, or encumbrances against the insured property and/or against your [sic] personally existing at the time of the fire loss, including records indicating the balance due on any such debts at the time of the loss;
24. Copies of all your personal federal income tax returns for 2004, 2005, 2006, 2007, and 2008;
25. Records regarding any civil, criminal or bankruptcy proceedings filed or instituted by or on behalf of or against you personally within the last two years;
26. Copies of any monthly statements for any and all personal credit card accounts including store accounts . . . you personally held for the period from January 1, 2006 through the present; and
27. All other documents of any kind or nature that would support or verify the claim you have filed for this fire loss.

[Doc. No. 15, Exhibit E]. First, and as noted above, section E(3) is ambiguous, and ambiguities are construed in favor of the insured. Second, Scottsdale's request for production is onerous in light of the fact that it includes requests for documents that were purportedly lost in the fire. Interpreting section E(3) to encompass such a request for production would lead to an absurd result by "plac[ing] control of [a] plaintiff's suit for the enforcement of his rights in the hands of the adverse party." *Miers*, 205 F.Supp. at 110.

  Scottsdale cites *Girard v. Atlantic Mutual Ins. Co.* for the proposition that Swank did not fully comply with section E(3). 198 So.2d 444 (La. Ct. App. 1967). In *Girard*, the court held that an insured prematurely filed suit when the insured refused to comply with an insurer's request for an appraisal of property covered under an insurance policy. *Id.* at 447. However, in this case, Swank offers evidence that he sent Scottsdale an appraisal of Rooster's and that he has otherwise complied with the terms of section E(3). [Doc. No. 17, Exhibits 1 & 5].

9

This case is also unlike *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361 (E.D. La. Oct. 8, 2008), *aff'd*, 330 Fed. Appx. 65 (5th Cir. 2009). In *Mosadegh*, the court held that a suit was premature when an insured refused to submit to a deposition in accordance with the terms of an insurance policy. *Id.* at *3-4. The court noted that "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy." *Id.* at *3 (citation and quotation omitted). The court also noted that the failure to cooperate with an insurer "may be manifested by a refusal to submit to an examination under oath or a refusal to produce documents." *Id.* (citation and quotation omitted). The court dismissed an insured's claims because he refused to submit to a single deposition. *Id.* However, in this case, Swank submitted to two depositions and offers evidence that he sent Scottsdale all of the documents requested that were in his possession, custody, or control. [Doc. No. 15, Exhibits 2 & 3]; [Doc. No. 17, Exhibit 1].

Accordingly, Scottsdale's Motion for Summary Judgment is DENIED.

III. **CONCLUSION**

For the foregoing reasons, Scottsdale's Motion for Summary Judgment [Doc. No. 15] is DENIED.

MONROE, LOUISIANA, this 25 day of June, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE